[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dispute arises out of a bailment whereby the plaintiff arranged for her moving company to deliver her prized grand piano to the defendant for storage in its storage warehouse. It was received by the defendant in May of 1994.
When the plaintiff called to have her piano delivered in May of 1995, the defendant was unable to locate it and sought to trace it. Four months later, the defendant called the plaintiff to its store and showed her a piano, stating it was hers and that it had been sold, not stored, in error. The defendant said it had managed to buy it back from its purchaser.
The plaintiff examined this piano and stated that it was not hers, but eventually agreed to accept it, pending her obtaining CT Page 13136 the serial number of her piano from someone who had serviced it for many years. That number would then be compared with the number of the piano the defendant had recovered. This condition was stated on the delivery ticket which also described the piano delivered as bearing number 126106. Actually, that piano carried number 157253.
The plaintiff went about trying to contact the piano tuner she had dealt with years before in the hope that she would have retained her business records and that they would reveal the serial number of the piano.
Meanwhile, the parties discussed a fresh problem — the piano had been delivered, but when the defendant's tuner went to tune it, he discovered it needed considerable work to render it playable.
The plaintiff and the defendant agreed to split this cost, with the plaintiff paying $1,007.00. She maintains that this was a temporary solution, also dependent upon a resolution of the serial number question. The defendant claims this was by way of an accord and satisfaction and with the repairs completed, the matter was closed.
Subsequently, the number 126106 was verified as the number belonging to the plaintiffs instrument, thereby eliminating the piano in her possession as the one originally delivered to the defendant.
The plaintiff claims the instrument she has is inferior to hers, even though it is newer, and claims damages for the loss of her piano and the accompanying expenses by virtue of a breach of contract. She has also alleged a CUTPA violation and seeks punitive damages. She also seeks treble damages under Section52-564 of the General Statutes for theft.
 DISCUSSION I
Addressing first what it perceives as the only simple issue in this case, the court does not find any basis in fact to sustain the second count, sounding in theft.
While there is room to criticize many aspects of the CT Page 13137 defendant's behavior, no acts or series of acts amounts to a theft and the court does not find it knowingly received and concealed stolen property.
 II
A. While the defendant characterized this transaction as "all a mistake," there is ample evidence to support the plaintiffs claim of a breach of contract.
First of all, there can be no dispute that the defendant agreed to become the bailee of the plaintiffs property for a specific purpose. It was the fault of the defendant's agents or employees that it left their warehouse without the plaintiffs knowledge.
The fact that the delivery ticket, Exhibit C, contains the serial number of the plaintiffs piano is probative of the fact that it was known to the defendant and was in his data base. Whether by error or oversight, that piano was permitted to leave the warehouse and in view of the #157253 imprinted on the recovered item, the court must conclude that piano #157253 is not that of the plaintiff and at this time no one knows where #126106 is. This must be construed as evidence of negligence on the part of the defendant in parting with #126106 and not knowing it was the plaintiffs property.
In oral argument, the defendant admitted its negligence, but proceeded to blame the shipper of the plaintiffs piano because it had no bill of lading and it wasn't a regular piano mover. However, it did deliver the piano to the defendant and in no way contributed to the events leading up to the piano disappearing.
The court must conclude that the defendant breached its contract with the plaintiff.
B. The next question which must be addressed is the defendant's affirmative defense of accord and satisfaction.
The delivery ticket, Exhibit C, dated October 27, 1995, contains this language:
 "If serial # does not match we will take back and attempt to find correct one."
CT Page 13138 Subsequently, the parties had discussions about repairs. The necessity for these repairs was assessed by the defendant's piano technician who examined the instrument when he came to the plaintiffs residence to tune it. The plaintiff agreed to pay $1,007.00, roughly a half of the repair cost plus tax. This transaction is verified by Exhibits D E.
On neither exhibit nor in any other document is there a statement to the effect that this transaction was to serve as a full and final agreement between the parties.
The plaintiff claims the condition set out in the delivery ticket still pertained, while the defendant argues this was an accord and satisfaction.
The court does not consider it likely nor reasonable for an experienced business man, as the defendant's principal was and is, to settle such a long, drawn out and acrimonious dispute without taking steps to memorialize the disposition in writing.
After this repair work was concluded, the plaintiff received verification of the actual serial number indicating the recovered piano was not hers.
The court finds the plaintiffs explanation to be the more reasonable and logical one and rejects the defendant's affirmative defense of accord and satisfaction.
C. The issue of damages for the breach of contract presents a virtual bramblebush of intertwined opinions and contradictions, starting with the value of the lost piano.
The plaintiff valued her piano as being worth between 7 and 10 thousand dollars. Her expert, assuming it to be in the condition described by the plaintiff, set a value of from 8 to 10 thousand dollars.
The defendant's principal, Dennis Oligino, set the value at $3,500.00, but with a grade A finish, at between $4500 and $4900. His expert placed the value at $7500 and found the piano which had been delivered to the plaintiff at far less, though it was a much newer model.
Finally, the defendant in Exhibit E placed a value on the incorrect piano it had just repaired at $12,000, describing it as CT Page 13139 of the vintage of the missing instrument. Mr. Oligino explained this figure as representing the replacement cost of a new piano of the same type.
From these figures and the accompanying testimony, the court concludes that the reasonable value of the lost piano was $8,500.
In view of the fact that it was the defendant's fault that the plaintiff was caused to spend $1,007 on the wrong piano, she is entitled to recover that amount also.
Finally, the plaintiff seeks to recover $635, her cost to ship her piano to the defendant's location and $452 which she paid to store her piano. She offers to return the piano in her possession.
The expense of shipping the piano occurred prior to the existence of any relationship between the plaintiff and the defendant. While one could argue it was part of the bailment because the plaintiff shipped the piano on the defendant's assurance it would accept it and store it, this seems somewhat remote.
The plaintiff is entitled to a return of storage paid because of the defendant's failure to perform its argument.
In summary, the court finds the plaintiff entitled to damages of $8,500.00 for the piano, $1007.00 spent on repairs and $452.00 in storage fees paid. These total $9,959.00.
 III
The plaintiff seeks the enhanced damages permitted when a violation of CUTPA is found.
On the evidence presented, the court concludes that the defendant was certainly guilty of negligence in its business dealings with the plaintiff, but that its actions were not intentional and were not calculated to deceive.
Support for this view is found in its efforts to locate the plaintiff's piano, and its repurchase of the second piano to return it to the plaintiff. The assumption by the defendant that the recovered piano was that of the plaintiff was not unreasonable. Even the plaintiff conceded they looked alike. Both CT Page 13140 were of the same manufacturer.
The court finds that the defendant believed it had recovered her piano when it so advised the plaintiff.
Recovery under CUTPA is denied.
 CONCLUSION
Judgment may enter for the plaintiff to recover of the defendant the sum of $9,959.00 plus taxable costs. The piano bearing #157253 is to be returned to the defendant, at its expense, upon satisfaction of this judgment.
Anthony V. DeMayo Judge Trial Referee